UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-04849-MRA-SK | Date | April 20, 2026 |
| Title | *Alethea O'Toole v. Nickelodeon Animation Studios, Inc. et al.* | | |

| | |
|---|---|
| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| Melissa H. Kunig | None Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT [84] [85]**

Before the Court are Defendants' Motions to Dismiss Plaintiff's Second Amended Complaint. ECF 33. The Court read and considered the Motions and opposing and reply papers and deemed the matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons stated herein, the Court **GRANTS** the Motions **with leave to amend**.

## I. BACKGROUND

### A. Factual Allegations[1]

Plaintiff Alethea O'Toole ("Plaintiff") filed this copyright infringement case against Nickelodeon Animation Studios Inc. ("Nickelodeon"); Paramount Global f.k.a. ViacomCBS Inc. ("Paramount"); Harbor Lights Entertainment, Inc. f.k.a. National Amusements, Inc. ("National Amusements"); Netflix, Inc. ("Netflix"), TajMania Entertainment ("TajMania"), Christopher M. Savino ("Savino"), and Darryl "Scott" Haynes ("Haynes") (collectively, "Defendants") on May 24, 2025. ECF 1.

Plaintiff filed the operative Second Amended Complaint ("SAC") on August 22, 2025.

[1] The factual background is described as alleged in Plaintiff's operative Second Amended Complaint. When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court is required to presume that all well-pleaded allegations are true, resolve all reasonable doubts and inferences in the pleader's favor, and view the pleading in the light most favorable to the non-moving party. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (per curiam); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

ECF 47.[2] As an initial matter, the Court notes that the SAC, which is 77 pages long, includes many extraneous facts that do not appear relevant or related to Plaintiff's claims, and the SAC does not clearly articulate the elements of each asserted cause of action, making it difficult for the Court to identify the facts supporting each claim. In addition, the SAC repeatedly references many different exhibits, none of which appear to be attached to the SAC itself or otherwise appear on the docket for this matter.

Plaintiff alleges she is the author and creator children's books, six of which are at issue in this litigation: (1) "Pirates of Pizzan"; (2) "Max and Puppy: Max's Birthday"; (3) "Max and Puppy: Puppy's First Snow"; (4) "Muffin Muncher: the Musical"; (5) "Live! With Truly"; and (6) "Westfield." ECF 47 at 2–3. Plaintiff alleges that Defendants replicated the elements of her original works in "*The Loud House*," a cartoon show that "depicts 'Lincoln Loud' and his ten human sisters." *Id.* at 21. Plaintiff alleges that Defendants "pillaged through [her] scripts, storyboards, and personal life to copy and recreate elements that were introduced into the universe of the *Loud House Franchise*." *Id.* at 7.

In June 2010, Plaintiff interviewed for a coordinator role with "Corovan moving and storage," and the interview took place at the Disney Lot in Defendant Haynes' office. *Id.* at 9. She accepted the role, at which time she worked as a subordinate to Haynes. *Id.* at 10. Haynes then pursued a "personal relationship" with Plaintiff that continued for several years. *Id.* This relationship gave Haynes access to Plaintiff's copyrighted material. *Id.*

In November 2011, Plaintiff left to work as a coordinator in the mailroom at the Disney Channel Building, where she "pitched her *Max and Puppy* story to [Defendant] Savino and executives as a story to potentially develop at Disney XD." *Id.* at 11.

In or before 2013, Savino submitted "initial concepts" to Nickelodeon's Short Program for a series about a "family of Funny Animal rabbits." *Id.* at 12. This submission was "the first known entry what . . . is now known as, *The Loud House Franchise*." *Id.* at 13. Plaintiff recognized the "white rabbit" from Savino's submission as a character description used in her short story *Max and Puppy*. *Id.* Plaintiff claims that she then "recognized further infringements on *Max and Puppy* that were used as major themes" in the *Loud House*. *Id.* at 15.

[2] On July 27, 2025, Plaintiff filed a document titled "(Amended) Complaint and Request for Injunction." ECF 27. Plaintiff then filed a Notice to Withdraw that document, stating that she "intended to file a Motion for Injunction, not a Complaint and Request for Injunction." ECF 29. In light of the Notice, the Cout struck the amended complaint and ordered Plaintiff to file and serve the Second Amended Complaint. ECF 39.

For example, Plaintiff alleges that a character from the *Loud House* "makes money throwing 'Big Top' birthday parties for children," which include "a trunk full of props, using a rubber chicken, her juggling act, her red rubber nose, rainbow clown wig, hobo clothes, and clown friends." *Id.* at 16. Plaintiff then describes a "backyard birthday party scene" from *Max and Puppy* which also features a top hat, magic tricks, and a stuffed white rabbit. *Id.* Plaintiff compares this scene to a screenshot from the *Loud House* where a character is wearing a top hat. *Id.* Plaintiff also compares an image of a *Loud House* character dressed as a clown to a picture of herself at age 4, wearing clown makeup. *Id.* at 18.

In 2014, Plaintiff was approached by Howard Gimple, Chief Creative Officer and Writer for TajMania, "a company with ties to Nickelodeon." *Id.* at 25. Between 2014 and 2015 Plaintiff sent copies of her work *Live! With Truly* to TajMania. *Id.* at 26. Plaintiff alleges on "information and belief that between 2012-2014 TajMania . . . pitched multiple scripts to Nickelodeon who 'passed after some initial interest.'" *Id.* Plaintiff alleges that while developing *Live! With Truly*, she sent a photograph of her son and his friend, meant to depict the two main male characters, one Caucasian and one African American. *Id.* The SAC includes what is presumably that photograph next to an unlabeled screenshot depicting a pair of cartoon characters. *Id.* at 27. According to the SAC, "Plaintiff also found major creative elements of *Live! With Truly* that were lifted by Nickelodeon from email conversations Plaintiff had directly with Gimple while developing the pilot." *Id.* at 27.

Plaintiff claims that she "found examples of infringements within *The Loud House* series which are direct infringements of protectable elements copyrighted by Plaintiff and found within her original works." *Id.* at 30.

Elsewhere in the SAC, Plaintiff alleges that characters in the *Loud House* bear resemblance to herself and to her son. *Id.* at 57–58.

Based on these allegations, Plaintiff asserts nine causes of action: (1) copyright infringement; (2) negligence; (3) willful infringement; (4) unfair competition, (5) collusion/civil conspiracy; (6) breach of contract; (7) extortion; (8) right of publicity/invasion of right of privacy; and (9) alter ego/corporate responsibility.

### B. Procedural History

#### *1. Plaintiff's First Action*

Plaintiff previously filed a complaint against the named defendants in this action, as well as several others, on December 18, 2024. *Alethea C. O'Toole et al v. Nickelodeon Animation*

*Studio et al.*, Case No. 2:24-cv-10996-MRA-SK (C.D. Cal. Dec. 18, 2024) ("*O'Toole I*"). Plaintiff also filed a Request to Proceed in Forma Pauperis. *O'Toole I*, ECF 3. Plaintiff's original complaint in the First Action was almost 400 pages long. *O'Toole I*, ECF 1. The Court ordered Plaintiff to file an amended complaint of a reasonable length and with a short and plain statement of a claim or claims. *O'Toole I*, ECF 52. Plaintiff filed an amended complaint, which was 114 pages long, named 20 different defendants, and failed to clearly allege claims against each defendant. *O'Toole I*, ECF 53. The Court once again ordered Plaintiff to file an amended complaint containing a short and plain statement of a claim or claims, as well as specific allegations as to the liability of each defendant. *O'Toole I*, ECF 54. The Court warned Plaintiff that failure to comply with the Court's instructions would result in dismissal of the case. *Id.*

Plaintiff then filed a Second Amended Complaint in *O'Toole I*, raising nine claims against nine defendants. *O'Toole I*, ECF 55. Like the operative complaint in this action, the Second Amended Complaint in *O'Toole I* alleged copyright infringement of Plaintiff's work "Prince of Pizzan" and other works. *Id.* Because Plaintiff sought to proceed in forma pauperis, the Court reviewed the SAC and determined that it failed to state a claim on which relief could be granted. *O'Toole I*, ECF 57. The Court stated that the Second Amended Complaint "fail[ed] to allege specific wrongdoing" by certain defendants, and that Plaintiff "allege[d] no cognizable claim of wrongdoing against them." *Id.* at 2. The Court further determined that leave to amend was not warranted in light of Plaintiff's two previous opportunities to amend. *Id.*

On October 12, 2025, Plaintiff appealed the Court's dismissal order. *O'Toole I*, ECF 62. On March 2, 2026, the United States Court of Appeals for the Ninth Circuit dismissed the appeal as frivolous. *O'Toole I*, ECF 70.

### *2. The Instant Action*

Approximately one month after the Court dismissed *O'Toole I*, on May 24, 2025, Plaintiff filed the original complaint in the instant action. ECF 1. After Plaintiff filed an amended complaint, ECF 27, and "Notice to Withdraw Complaint and Request for Injunction," ECF 29, the Court ordered Plaintiff to file and serve a corrected second amended complaint, ECF 39. Plaintiff filed the operative SAC on August 22, 2025. ECF 47.

Defendants then filed Notices of Related Cases, which indicated that the SAC asserts substantially the same claims against substantially the same defendants as *O'Toole I*. ECF 67, 68. Plaintiff then filed a "Response to Defendants' Notice of Related Cases," in which Plaintiff asserted that the undersigned judge was disqualified from presiding over this action. ECF 74. The instant action was transferred to the undersigned judge on October 17, 2025, pursuant to Central District of California General Order 24-04. ECF 79. Plaintiff then filed two documents

titled "Affidavit of Disqualification of Judge," ECF 82, 83, which the Court construed as a Motion for Disqualification and denied, ECF 94.

On November 25, 2025, Nickelodeon, Paramount, National Amusements, and Netflix (collectively, the "Moving Entity Defendants") filed a Motion to Dismiss the SAC for failure to comply with Federal Rule of Civil Procedure 8 and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF 84. Savino filed a separate Motion to Dismiss the SAC. ECF 85.[3] Plaintiff opposes both Motions. ECF 99.

## II. LEGAL STANDARD

### A. Rule 8

Under Federal Rule of Civil Procedure 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Although the Federal Rules adopt a flexible pleading policy, a complaint must give fair notice and state the elements of the claim plainly and succinctly. *Jones v. Comty. Redev. Agency of City of Los Angeles,* 733 F.2d 646, 649 (9th Cir. 1984). Therefore, a plaintiff must allege with at least some degree of particularity the overt acts which the defendants engaged in that support plaintiff's claim. *Id.* "[A] pleading that [is] needlessly long, or . . . highly repetitious, or confused, or consist[s] of incomprehensible rambling" violates Rule 8(a). *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1217 (3d ed. 2010)).

Dismissal is appropriate where the complaint fails to meet the requirements of Rule 8. "The propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). Rule 8 "applies to good claims as well as bad, and is a basis for dismissal independent of Rule 12(b)(6)." *Id.*

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for failure to state a claim upon which relief can be granted. "On a motion to dismiss, all material facts are accepted as true and are construed in the light most favorable to the plaintiff." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (citing *Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611

[3] The Moving Entity Defendants and Savino are referred to herein as the "Moving Defendants."

F.3d 495, 501 (9th Cir. 2010)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008). In other words, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (2009). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. <u>DISCUSSION</u>

### A. Rule 8

The Moving Defendants argue that the SAC fails to comply with Rule 8 because it "is so verbose, confused and redundant that its true substance, if any, is well-disguised." *See* ECF 84 (quoting *Corcoran v. Yorty*, 347 F.2d 222, 223 (9th Cir. 1965)). The Court agrees. Although the Court construes Plaintiff's *pro se* filings liberally, the Court concludes that the SAC fails to provide "a short and plain statement of the claim[s]" showing that she is entitled to relief. Fed. R. Civ. P. 8(a)(2). The SAC is 77 pages and contains 226 paragraphs, some of which are misnumbered in violation of Federal Rule of Civil Procedure 10(b). Moreover, much of the SAC "consists of lengthy descriptions of disparate events, unsupported accusations of wrongdoing and wrongful intent, and repeated recitations of elements of causes of action." *Deville v. Specialized Loan Servicing, LLC*, No. EDCV205576JGBEX, 2020 WL 13267725, at *3 (C.D. Cal. Sept. 9, 2020). For example, several pages of the SAC recount Plaintiff's professional and personal history, the personal life of Defendant Haynes, and other events that have no apparent connection to Plaintiff's claims against the Moving Defendants. ECF 47 at 8–9, 31–32, 35–36. The SAC also includes several images and screenshots, without a clear explanation of what they are or how they relate to Plaintiff's claims, which leaves the Court to speculate as to their relevance.

Moreover, as to each of Plaintiff's nine causes of action, Plaintiff fails to identify specific Defendants in the allegations bearing on each cause of action and instead refers to "Defendants" generally. ECF 47 at 61. "This makes it difficult to ascertain what alleged wrongful conduct is attributable to each Defendant, and fails to give notice to Defendants of the claims against them." *Deville*, 2020 WL 13267725, at *3 (citing *Jones v. Comty. Redev. Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984)).

For the foregoing reasons, the Court **DISMISSES** the SAC in its entirety. However, because Plaintiff may be able to remedy these deficiencies, the Court **GRANTS LEAVE TO**

**AMEND** the SAC, subject to the limitations described below.

**B. Rule 12(b)(6)**

If Plaintiff chooses to file an amended complaint, Plaintiff must meet the requirements identified below as to each claim to adequately state claims for relief. The Court cautions Plaintiff that stating a claim "requires more than labels and conclusions" or "a recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). That is, plaintiffs cannot simply list the elements of each cause of action and allege that defendants violated the law. Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* Plaintiffs must therefore allege specific actions taken by *each* Defendant that satisfy the required elements of each cause of action. General statements about "unlawful acts" will not suffice. *See Iqbal*, 556 U.S. at 678 ("[A complaint] demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."). And although the Court affords Plaintiff's *pro se* pleadings a liberal construction, the Court is not required to sort through Plaintiff's factual allegations in search of a viable claim. *See Independent Towers of Wash. v. Wash.,* 350 F.3d 925, 929 (9th Cir.2003).

***1. Copyright Infringement and Willful Copyright Infringement***

Plaintiff's first cause of action is for copyright infringement. ECF 47 at 60. To state a claim for copyright infringement, Plaintiff must allege (1) ownership of a valid copyright and (2) defendant's copying of constituent elements of the work that are original. *Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). "To allege actionable copying," Plaintiff must "plead facts plausibly showing either (1) that the two works in question are strikingly similar or (2) that the works are substantially similar and that [Defendants] had access to the [Subject Work]." *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 952 (9th Cir. 2019) (quotation marks omitted). To determine similarity at the pleading stage, courts apply the "extrinsic test." *Id.* The extrinsic test "compares the objective similarities of specific expressive elements in the two works." *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020). It requires distinguishing between the protected and unprotected aspects of a plaintiff's work because the Copyright Act safeguards only protected aspects. *Id.*

Here, Plaintiff identifies several "original works," but the SAC does not allege that Plaintiff owns a valid copyright in each of those works. Moreover, the SAC does not identify the protected aspects of plaintiff's work or how each defendant specifically copied those constituent elements. To the extent that Plaintiff wishes to rely on screenshots or images to demonstrate similarity, such images must be sufficiently labeled and described to enable the Court and Defendants to understand the basis of Plaintiff's allegations of copying.

To the extent that Plaintiff alleges any infringement was willful, that does not create a separate cause of action but rather triggers certain statutory damages under the Copyright Act. *See* 17 U.S.C. § 504(c)(2). To establish willfulness, Plaintiff must plead and prove (1) that Defendants were actually aware of the infringing activity, or (2) that Defendants' actions were the result of "reckless disregard for" or "willful blindness" to the copyright holder's rights. *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012). Conclusory allegations that Defendants acted "knowingly" or "in reckless disregard," without any factual allegations regarding Defendants' knowledge, willfulness, or recklessness, are insufficient to state a claim for willful infringement. *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1054–55 (C.D. Cal. 2011).

### *2. Negligence*

Plaintiff's second cause of action for negligence alleges that Defendants breached their duty of reasonable care by, *inter alia*, "wrongful copyright acts." ECF 65 at 76. To the extent that Plaintiff seeks to assert a claim of negligence that is based on Defendants' alleged infringement of Plaintiff's copyrights, such a claim would be preempted by federal law. *See Dielsi v. Falk*, 916 F. Supp. 985, 991 (C.D. Cal. 1996); *see also Felix Cat Prods. Inc. v. New Line Cinema*, No. CV 99-9339 FMC (RCX), 2000 WL 770481, at *5 (C.D. Cal. Apr. 28, 2000) ("Plaintiff's negligence claim, based on the alleged infringement of plaintiff's copyright, is preempted by federal law.").

If Plaintiff's amended complaint includes a negligence claim which seeks to "protect rights which are qualitatively different from copyright rights," *Valente-Kritzer Video v. Pinckney*, 881 F.2d 772, 776 (9th Cir. 1989), such a claim must adequately plead the elements of negligence against each Defendant named in that claim. To state a claim for negligence, Plaintiff must state facts plausibly alleging that (1) each Defendant owed Plaintiff a legal duty to use due care; (2) each Defendant breached their duty; and (3) the Defendant's breach was the proximate or legal cause of Plaintiff's resulting injury. *See Ladd v. County of San Mateo*, 12 Cal. 4th 913, 917 (Cal. 1996). Plaintiff must plausibly allege facts supporting each element of the negligence claim. *See Iqbal*, 556 U.S. at 679.

### *3. Unfair Competition*

Plaintiff's fourth cause of action is for unfair competition and alleges that "National Amusements . . . has used means of unfair competition to recreate material and goods without fair use." ECF 47 at 66. If Plaintiff chooses to assert an unfair competition claim in an amended complaint, Plaintiff must identify the statutory or common law basis for such a claim, and Plaintiff must plausibly allege the elements of that claim. Plaintiff is cautioned that state law claims for

unfair competition that are predicated on copyright infringement are preempted by the Copyright Act. *See Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 999 (C.D. Cal. 2011).

***4. Collusion/Civil Conspiracy***

Plaintiff's fifth cause of action is for "collusion/civil conspiracy." ECF 47 at 66. The Court notes that there is no separate cause of action for civil conspiracy under California law. *Broidy Cap. Mgmt., LLC v. State of Qatar*, 982 F.3d 582, 588 (9th Cir. 2020); *Kenne v. Stennis*, 230 Cal. App. 4th 953, 968 (2014) ("Conspiracy is not a cause of action. It is a theory of liability under which persons who, although they do not actually commit a tort themselves, share with the tortfeasor or tortfeasors a common plan or design in its perpetration.").

***5. Breach of Contract***

Plaintiff's sixth cause of action for breach of contract alleges that Plaintiff entered into implied and verbal contracts with Defendants Savino, Haynes, and TajMania. ECF 47 at 68. To state a claim for breach of contract, plaintiff must allege "the existence of the contract, performance by the plaintiff or excuse for nonperformance, breach by the defendant, and damages." *First Commercial Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001). If Plaintiff seeks to assert a claim for breach of an implied contract, the amended complaint must contain sufficient factual allegations to support these elements, including the existence and terms of such an agreement. *Bergman v. Bank of Am.*, Case No. 13–cv–00741 JCS, 2013 WL 5863057, at *15 (N.D.Cal. Oct. 23, 2013); *Twaite v. Allstate Ins. Co.*, 216 Cal. App. 3d 239, 252 (1989) ("To state a cause of action for breach of contract, it is absolutely essential to plead the terms of the contract either in haec verba or according to legal effect."). "To satisfy the first element–the existence of a contract—a plaintiff must show offer, acceptance, and consideration." *Valdez v. JPMorgan Chase Bank, N.A.*, No. EDCV 11–0935 DOC (DTBx), 2012 WL 995278, at *6 (C.D. Cal. Mar. 20, 2012) (citing *Hecimovich v. Encincal Sch. Parent Teacher Org.*, 203 Cal. App. 4th 450, 474–75 (2012). Currently, the SAC's allegations—that Defendants "took" Plaintiff's work into their possession—does not sufficiently plead the existence of consideration. ECF 47 at 67. The SAC also fails to state the precise terms allegedly breached by each Defendant, how those terms were breached, and whether Plaintiff performed or was excused from performing her obligations under the alleged contracts. To survive a motion to dismiss, Plaintiff must plausibly allege these elements.

***6. Extortion***

Plaintiff's seventh cause of action for extortion appears to be brought against Defendants Haynes and TajMania, neither of whom have joined in the instant Motions to Dismiss. To the

extent that Plaintiff hopes to secure default judgment on this claim, the complaint's allegations must be sufficient to state a claim upon which relief can be granted. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). The Court does not opine on the merits of this claim at this juncture.

### *7. Right of Publicity/Invasion of Right of Privacy*

Plaintiff's eighth cause of action for "right of publicity/invasion of privacy" alleges that certain Defendants had access to images of Plaintiff and her friends and family and used those images to create characters in *Loud House*. ECF 47 at 69. Elsewhere in the Complaint, Plaintiff refers to images of her son and father. *Id.* at 57–59. A "common law right of publicity . . . claim has four elements: (1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 208 (2017). Plaintiff's amended complaint, should she choose to file one, must set forth factual allegations supporting each of these elements, and Plaintiff generally may not assert right of publicity claims on behalf of third parties without demonstrating that the third parties have assigned the right of publicity to Plaintiff. *See Upper Deck Co. v. Flores*, 569 F. Supp. 3d 1050, 1068 (S.D. Cal. 2021)

As to Plaintiff's invasion of privacy claim, "[a] privacy violation based on the common law tort of intrusion has two elements. First, the defendant must intentionally intrude into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy. Second, the intrusion must occur in a manner highly offensive to a reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 285 (2009). The SAC does not allege that Plaintiff had a reasonable expectation of privacy, nor does it identify any intrusion that would be highly offensive to a reasonable person. As with the other claims, Plaintiff must support this claim in an amended complaint with plausible factual allegations.

### *8. Alter Ego/Corporate Responsibility*

Plaintiff's ninth and final cause of action for "alter ego/corporate responsibility" alleges that "Bob Bakish and Shari Redstone make personal decisions related to the infringement." ECF 47 at 69. As federal courts consistently recognize, alter ego is not a separate cause of action in and of itself, and instead "is only a means of imposing liability for an underlying cause of action." *Local 159 v. Norcal Plumbing, Inc.*, 185 F.3d 978, 985 (9th Cir. 1999). Neither Bob Bakish nor Shari Redstone are named as defendants in the complaint, and in order to establish alter ego liability, Plaintiff must allege sufficient facts to demonstrate such "unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist" and that "if the acts are treated as those of the corporation alone, an inequitable result will follow." *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985). The SAC includes no such allegations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-04849-MRA-SK | Date | April 20, 2026 |
| Title | *Alethea O'Toole v. Nickelodeon Animation Studios, Inc. et al.* | | |

**C. CONCLUSION**

For the foregoing reasons, Defendants' Motions to Dismiss Plaintiff's Second Amended Complaint [84] [85] are **GRANTED with leave to amend**.

Plaintiff shall file an amended complaint, if any, within **21 days of the issuance of this Order**, remedying the deficiencies discussed above. Plaintiff's amended complaint must clearly state the factual basis for each named defendant's liability as to each cause of action asserted.

**IT IS SO ORDERED.**

- : -

Initials of Deputy Clerk mku